UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA,                    :
                                             :
                                             :        22-cr-58-PAC
                                             :
              - against -                    :
                                             :        **OPINION & ORDER**
                                             :
CARLOS LAUREANO & NNANDI                     :
BEN-JOCHANNAN,                               :
                                             :
                          *Defendants.*      :
-------------------------------------------------------------------X

      Defendants Carlos Laureano and Nnandi Ben-Jochannan ("Laureano" and "Ben-Jochannan," collectively, "Defendants"), are charged in an indictment ("Indictment") that accuses them of participating in an August 2014 shooting that caused the death of Luis Perez. Laureano and Ben-Jochannan move to dismiss the Indictment for preindictment delay. For the reasons that follow, their motions are **DENIED**.

## BACKGROUND

      Laureano and Ben-Jochannan are charged in an Indictment returned on January 27, 2022. Indictment, ECF No. 1. Count One of the Indictment alleges that on or about August 12, 2014, Laureano and Ben-Jochannan caused the death of Perez through the use of a firearm while they were engaged in a conspiracy to distribute and possess with the intent to distribute mixtures and substances containing a detectable amount of heroin and marijuana in violation of 18 U.S.C. §§ 924(j), 2. Count Two alleges that while engaged in a conspiracy to distribute and possess with the intent to distribute one kilogram and more of mixtures and substances containing a detectable amount of heroin and marijuana, they intentionally and knowingly killed Perez in violation of 21

U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. Indictment ¶¶ 1–2.[1] The Indictment alleges that the shooting took place in the vicinity of 501 West 147th Street in Manhattan. *Id.* According to the Government, Laureano and Ben-Jochannan participated in a drug trafficking organization ("DTO") that distributed substantial amounts of heroin and marijuana in the Bronx and that they killed Perez in retaliation for a drug-related dispute. *See* Gov't Opp'n at 2, ECF No. 35. Laureano, Ben-Jochannan, and a third member of the DTO, Saleem Jordan,[2] drove to the intersection of West 147th Street and Amsterdam Avenue; Ben-Jochannan then parked and waited while Laureano and Jordan sought out Perez. *Id.* at 3. Jordan then acted as a lookout while Laureano approached Perez and his girlfriend and shot him in the head. *Id.* The Government also alleges that after the murder, the trio destroyed evidence linking them to the crime, including cleaning the interior of Ben-Jochannan's car and destroying surveillance footage from the parking garage where they stored the car after the murder. *Id.*

Almost immediately after the shooting, police officers canvassed the area, collected evidence, and interviewed witnesses. *See* Laureano's Br., Sealed Exs., ECF No. 32. Two New York Police Department ("NYPD") officers on patrol nearby heard gunshots, arrived on the scene, and pursued a white BMW that bystanders reported fled after Perez was shot. *Id.* Although the officers ultimately gave up pursuit, they took down the BMW's license plate number and quickly identified Ben-Jochannan's mother as its owner. *Id.*

Investigators also spoke to two witnesses ("Witness 1" and "Witness 2") who heard and/or saw the shooting. *Id.* Witness 1 told police, *inter alia*, that he overheard parts of an argument

---

[1] The Indictment also charges Laureano with two additional counts related to drug trafficking and firearm possession (Counts Three and Four, respectively). *See* Indictment ¶¶ 3–4, ECF No. 1. He only moves here to dismiss Counts One and Two.

[2] Jordan died in 2016, before the Indictment was returned.

between two black males and Perez. According to the portions of the argument Witness 1 overheard, Perez and one of the men argued about a romantic relationship with a woman. Both men, he claims, then left Perez and drove off in a white BMW but returned in the same car a few minutes later. The driver exited the vehicle, approached Perez, and shot him three times, twice in the head, before returning to the BMW and fleeing the scene. Witness 1 described the gunman as "male, black, 26-27 years, 6'00" tall, [and with a] thin build" and his companion as "male, black, 26-27 years, 5'10" to 6 '00" tall, [and with a] thin build." *Id.* Witness 2 also told police that he saw Perez arguing with two men near a BMW SUV before one of them shot Perez three times. He did not report what the argument was about and told the police he could not get a good look at either assailant. *Id.*

Local investigators—including the NYPD and Manhattan District Attorney's office—spoke with Laureano at least once and Ben-Jochannan several times about their possible involvement in the shooting between 2014 and 2016. By late 2016, investigators had identified Laureano, Ben-Jochannan, and Jordan, as suspects. *See id.* Investigators also met with local prosecutors repeatedly to discuss the case; but no arrests were made, nor charges brought.

On November 16, 2017, investigators met with Assistant United States Attorney ("AUSA") Jacqueline Kelly to discuss the Perez murder. According to the Government, these detectives were from the NYPD's "Cold Case Squad." Gov't Opp'n at 4. The Government maintains that the Perez murder remained a cold case until 2018 when AUSAs in the Southern District of New York—with support from the Drug Enforcement Administration and NYPD—opened its own investigation. The Government served subpoenas in anticipation of a grand jury convening in May 2018, but the record does not reflect whether a grand jury was impaneled in response. The NYPD and, later, AUSAs spoke with Ben-Jochannan in 2020. Laureano and Ben-

Jochannan were indicted by a federal grand jury on January 27, 2022, and arrested on February 1, 2022.

Both Defendants now move to dismiss Counts One and Two of the Indictment, alleging that preindictment delay violated their constitutional rights. The Court heard oral argument on May 18, 2023.

## DISCUSSION

### I.    Legal Standard

Due process concerns are only implicated when a defendant must stand trial after preindictment delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, . . . and which define the community's sense of fair play and decency." *United States v. Jordan*, --- F. Supp. 3d. ---, 2022 WL 4325870, at *2 (E.D.N.Y. Sept. 19, 2022) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977) (internal quotation marks omitted)). A defendant seeking to prevail on a claim that an indictment violates constitutional due process therefore bears the "'heavy burden' of proving both that he suffered actual prejudice because of the alleged pre-indictment delay *and* that such delay was a course intentionally pursued by the government for an improper purpose." *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999) (emphasis in original) (quoting *United States v. Scarpa*, 913 F.2d 993, 104 (2d Cir. 1990)).[3] "[W]hile the [Supreme] Court may not have shut the door firmly on a contention that at

---

[3] Both the Second Circuit and Supreme Court have intimated that a prosecutor's reckless disregard of circumstances that impedes a defendant's ability to mount a defense may support a preindictment delay due process challenge. *See United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *13 n.8 (S.D.N.Y. Jan. 18, 2017) (collecting cases); *Betterman v. Montana*, 578 U.S. 437, 441 (2016) ("[The] Due Process Clause may be violated, for instance, by prosecutorial delay that is 'tactical' *or* 'reckless.'" (emphasis added)). The Court, however, need not address whether reckless disregard could justify dismissing an indictment because the Defendants have failed to identify any actual and substantial prejudice.

some point the Due Process Clause forecloses prosecution of a claim because it is too old, at most the door is barely ajar." *DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 790–91 (2d Cir. 1999).

## II. <u>Discussion</u>

Laureano and Ben-Jochannan argue that the approximately four-year delay[4] preceding the Indictment impaired their ability to gather exculpatory evidence and caused three witnesses to become unavailable. They further speculate that the Government's delay in pursuing the Indictment was intentional or reckless because none of the discovery they received from the Government to date has included any evidence gathered after 2017.[5] The Government, for its part, claims that any delay was fully justified by its need to further investigate the murder and DTO, which it promptly did upon taking over the case from local authorities. Because the Defendants have failed to show actual prejudice sufficient to obtain dismissal of the Indictment, the Court need not reach the question of whether the Government's delay was intentional or reckless. *See United States v. Berry*, 20-CR-84 (AJN), 2021 WL 2665585, at *2 (S.D.N.Y. June 29, 2021).

A. <u>The Defendants have failed to adequately allege actual and substantial prejudice.</u>

The statute of limitations is "the primary guarantee against bringing overly stale criminal charges." *United States v. Marion*, 404 U.S. 307, 322 (1971). When, as here, an indictment is filed

---

[4] Any delay on the part of local investigators is likely not attributable to the Government, who only took over the case in late 2017. *See United States v. Mejias*, 552 F.2d 435, 443 (2d Cir. 1977). In any event, defense counsel concedes that the relevant delay period begins when the Government assumed control of the case. *See* Oral Argument Tr. 11:14–19; 18:14–21.

[5] In their replies, the Defendants accuse the Government, in the alternative, of withholding discoverable evidence. The Government maintains that it has produced all relevant material and that any additional discovery will be properly and timely disclosed prior to trial. The Court at oral argument reminded the Government of its disclosure obligations and noted that the parties could coordinate further disclosure, if necessary. *See id.* 54:13–16; 57:25. The Defendants may also request that the Court consider any necessary discovery motions. *See* Fed. R. Crim. P. 16(d).

within the statute of limitations, it is presumptively valid. *See Cornielle*, 171 F.3d at 752. A defendant thus must make a "specific, particularized showing of substantial prejudice to overcome this presumption." *Jordan*, 2022 WL 4325870, at *2. "The possibility of faded memories, unavailable witnesses, and loss of evidence, by itself, is insufficient." *Id.* (citing *Marion*, 404 U.S. at 325–26). Any lost evidence and witnesses must be key, not merely peripheral, to the defense. *See United States v. Rubin*, 609 F.2d 51, 66 (2d Cir. 1979); *United States v. Santiago*, 987 F. Supp. 2d 465, 485 (S.D.N.Y. 2013).

Both Defendants claim that the loss of Witnesses 1 and 2 prejudiced their ability to present a defense. Witness 1, they claim, would likely testify in line with his police report that the shooting was motivated by a lover's quarrel, not a drug dispute. They also maintain that his description of the assailants as two black men is exculpatory because Laureano is "a short, medium build, light-skinned Hispanic." Laureano Br. at 7. Finally, they claim that Witness 2's testimony is key because Witness 2 would corroborate that the assailants argued with Perez prior to the shooting.

Witness 2's testimony is simply peripheral, and his alleged absence does not substantially prejudice the Defendants. *See Berry*, 2021 WL 2665585, at *3. Witness 2 could not identify the assailants and only vaguely described an argument—without any details about the content—between Perez and the attackers. His purported testimony is therefore too speculative and immaterial to support dismissal. *See United States v. Birney*, 686 F.2d 102, 105–06 (2d Cir. 1982).

The Court is also skeptical that Witness 1's testimony about the contents of the argument between Perez and the assailants is substantially prejudicial because it would not, contrary to the Defendant's assertions, "utterly undermine the prosecution's theory of the case." *Santiago*, 987 F. Supp. 2d at 485. Even crediting his testimony as true, the Government need only prove beyond a reasonable doubt that *one*—and not even the primary—motive for a Sections 924(j) or

848(e)(1)(A) murder is related to a drug conspiracy. *See United States v. Kemp*, 21-1684-cr (CON), 2023 WL 405763 at *3 (2d Cir. Jan. 26, 2023) (summary order). That Witness 1 may have also heard Perez and Laureano arguing, in part, about a personal dispute is not so "substantially favorable," *United States v. Wey*, 15-cr-611 (AJN), 2017 WL 237651, at *14 (S.D.N.Y. Jan. 18, 2017), to the Defendants to compel dismissal.

Witness 1's description of the shooter, however, could be exculpatory because Laureano arguably does not match it.[6] But even if Witness 1's description is favorable and material, it does not currently justify dismissal because Witness 1 is not confirmed to be unavailable to testify at trial. Defense counsel conceded at oral argument that they do not know Witness 1's whereabouts, despite their best efforts to locate him, presumably because his name was redacted in police reports. *See* Oral Argument Tr. 14:10–25; 39:3–41:8. The Government, however, offered to coordinate disclosure of Witness 1's name to facilitate locating him. *See id.* 49:12–22. Laureano cannot now "state definitively whether [Witness 1] *will* be unavailable to testify at trial or even . . . whether [Witness 1] *would have been available* had the Government proceeded more speedily." *Wey*, 2017 WL 237651, at *14 (emphasis in original). He therefore fails at this juncture to demonstrate actual prejudice warranting dismissal. Because of the ambiguities surrounding Witness 1's availability at trial, however, Laureano may renew his motion if the factual record at trial shows otherwise. *See United States v. Maxwell*, 534 F. Supp. 3d 299, 316–17 (S.D.N.Y. 2021) (allowing defendant to renew motion to dismiss for preindictment delay if trial evidence warranted reconsideration).

---

[6] Witness 1's description is only *possibly* exculpatory because the Government claims it has at least one surveillance video clearly showing, in its view, a man matching Laureano's description shooting Perez. *See* Oral Argument Tr. 22:11–20.

Any alleged absence of Witness 1, however, does not equally prejudice Ben-Jochannan. Unlike Laureano—who arguably does not match the physical description provided by Witness 1— Ben-Jochannan does not claim that Witness 1 directly exculpates him but rather that any evidence exculpating Laureano necessarily exculpates him as well. This argument is meritless: Ben-Jochannan has not provided any legal or factual support for his contention that just because Laureano may not have been involved in the shooting that Ben-Jochannan likewise was not involved. Indeed, even assuming that Laureano was not the shooter, that says nothing about the fact that several witnesses and two police officers identified a white BMW later found to be owned by Ben-Jochannan's mother leaving the scene. Even Witness 1's confirmed absence would not warrant dismissal of the charges against Ben-Jochannan.

Ben-Jochannan also argues that Jordan's 2016 death substantially prejudiced him. In contrast to Witness 1, the Government does not contest that Jordan's death renders him unavailable. Nevertheless, Jordan's absence still does not justify dismissal. His death occurred before the Government took over the case and therefore any prejudice is likely not caused by its alleged delay. Even assuming *arguendo* that the delay was both caused by the Government and was intentional, Ben-Jochannan's motion still fails. He admits that his expectation that Jordan would testify "truthfully" that Ben-Jochannan had "no knowledge of any murder plot against Mr. Perez and was not involved in any drug conspiracy that included himself and Mr. Laureano" is "a bit speculative." Ben-Jochannan Reply at 5, ECF No. 37. On the contrary, this argument is 100% speculative. Ben-Jochannan has failed to demonstrate with any particularity or certainty that Jordan would testify as Ben-Jochannan expects nor has he raised any colorable argument supporting his contentions. *See United States v. Gotti*, 02-cr-743, 2004 WL 32858, at *4 (S.D.N.Y. Ja. 6, 2004). There are also "serious doubts under all of the relevant circumstances that a jury

would have found testimony from [Jordan] credible even if he had waived his right against self-incrimination and testified on [Ben-Jochannan's] behalf." *Maxwell*, 534 F. Supp. 3d at 317.

The Defendants' remaining claims of prejudice fail for similar reasons. Neither generalized claims of faded memories, *see United States v. Pierre-Louis*, 16 CR 541 (CM), 2018 WL 4043140, at * 4 (S.D.N.Y. Aug. 9, 2018), nor a "missed opportunity to explore whether a witness could offer testimony favorable to his defense," *United States v. Badoolah*, 12-CR-774, 2014 WL 4793787, at *4 (E.D.N.Y. Sept. 25, 2014), justify dismissal. Defendants have also failed to show that any missing surveillance footage, social media posts, or cell phone records are favorable to them. They provide only unsupported, unsworn claims of innocence corroborating that the videos would show someone else at the crime scene, or that cell phone records would show they were somewhere else besides the crime scene during the Perez murder. "Because the Defendant[s] carr[y] the burden of proof, [they are] not entitled to the inference that all absent evidence would have been both favorable and material to [their] case." *United States v. Maxwell*, 20-CR-330 (AJN), 2022 WL 1294433, at * 18 (S.D.N.Y. Apr. 29, 2022). The Defendants also baselessly presume that each piece of missing evidence favors them and not the Government, *id.*, ignoring that the passage of time "also handicaps the government['s]" ability to put on its case. *United States v. Harrison*, 764 F. Supp. 29, 32 (S.D.N.Y. 1991). Finally, by failing to allege with any specificity when such records became unavailable, the Defendants have not adequately demonstrated any loss was caused by preindictment delay. *Id.* They have therefore failed to show they suffered actual and substantial prejudice warranting dismissal.

B. The Defendants are not entitled to an evidentiary hearing.

The Court also denies the Defendants' request for an evidentiary hearing. Neither Defendant alleges factual issues that could currently be resolved through an evidentiary hearing and "because the Court has already determined that Defendants have not established substantial

9

prejudice from the purported delay, a hearing to give Defendants an opportunity to establish reckless or intentional conduct on the part of the Government would be of no legal consequence even if successful." *Jordan*, 2022 WL 4325870, at * 4.

## III.  Sixth Amendment and Rule 48

To the extent either Defendant moves to dismiss the Indictment as a violation of the Sixth Amendment or through Federal Rule of Criminal Procedure 48(b), such arguments are without merit.  Both are confined to delay after a defendant is arrested or indicted.  *See Marion*, 404 U.S. at 313, 319; *United States v. Blanco*, 861 F.2d 773, 780 (2d Cir. 1988).  Laureano and Ben-Jochannan claim prejudice from alleged delays that occurred prior to their indictment and arrest on the current federal charges; dismissal under Rule 48(b) or the Sixth Amendment would therefore be improper.

## **CONCLUSION**

For the reasons stated, the Court **DENIES** the Defendants' motion to dismiss the indictment for preindictment delay.  The Court of Clerk is respectfully requested to close docket nos. 23, 30, and 33.

Dated: New York, New York
      June 23, 2023

SO ORDERED

_____
HONORABLE PAUL A. CROTTY
United States District Judge